DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants/Cross-Appellees, Mary and Robert Smeltzer, appeal from the judgment of the Summit County Court of Common Pleas. Appellee/Cross-Appellant, David Pittard, appeals from the judgment of the Summit County Court of Common Pleas. This Court reverses in part and affirms in part.
 I. {¶ 2} On February 20, 2002, Appellants/Cross-Appellees, Mary and Robert Smeltzer ("the Smeltzers"), were traveling north on interstate 77 through Bath Township. Mr. Smeltzer was driving and Mrs. Smeltzer was the sole passenger. The Smeltzers were traveling in the left lane and Appellee/Cross-Appellant, David Pittard ("Pittard"), was driving an 18-wheel tractor trailer in the right lane when Appellee, Gail Binsley ("Binsley"), entered 77 North from the on-ramp to 77 North from Ghent Road. Any vehicle entering 77 North from this ramp was required to yield as the on-ramp merged into the right lane. Binsley failed to yield to on-coming traffic. Binsley's actions caused Pittard to change lanes veering left to avoid colliding with Binsley's vehicle. In so doing, Pittard caused Mr. Smeltzer to take evasive action into the right lane to avoid hitting Pittard's truck. Mr. Smeltzer collided with the rear of Binsley's vehicle. Mrs. Smeltzer sustained severe injury in the collision.
 {¶ 3} On February 19, 2004, the Smeltzers filed suit against Pittard and Peggy Moran, administratrix of the estate of Binsley and Allstate Insurance Company.[1] The case proceeded to jury trial in October 2005. On October 20, 2005, the jury rendered a verdict in favor of the Smeltzers and found that Mrs. Smeltzer was entitled to $127,956.79 in damages. The jury found that all three drivers were negligent and that their negligence was the proximate cause of Mrs. Smeltzer's injuries. The jury apportioned fault among the three drivers at 33-1/3% per driver. In two separate jury forms, the jury awarded verdicts in the amount of $42,652.26 in favor of Mrs. Smeltzer and against Binsley and Pittard, respectively.
 {¶ 4} At trial, the Smeltzers objected to the way the jury apportioned damages. The trial court entered judgment on October 24, 2005, awarding the Smeltzers $42,652.26 against Pittard and $42,652.26 against Binsley. On October 27, 2005, the Smeltzers moved to amend the final order. In their motion, the Smeltzers argued that the jury's damage verdict represented inappropriate apportionment of liability given the jury's finding that Mrs. Smeltzer suffered $127,956.79 in total damages. They relied upon Ohio law regarding joint and several liability. The court denied that motion on November 8, 2005. The Smeltzers then filed a Civ.R. 60(B) motion for relief from judgment. Pittard moved for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) on the grounds that there were no material facts to support the jury's finding that Pittard negligently caused Mrs. Smeltzer's injuries. The trial court denied both motions on January 12, 2006. The Smeltzers timely appealed the court's judgment, raising one assignment of error for our review. Pittard timely cross-appealed, raising one assignment of error for our review.
 II. CROSS-APPELLANT'S ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED BY DENYING [CROSS-APPELLANT'S] MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT."
 {¶ 5} In his only assignment of error, Pittard contends that the trial court erred by denying his motion for judgment notwithstanding the verdict ("JNOV"). We disagree.
 {¶ 6} When reviewing the propriety of a trial court's decision regarding a JNOV, an appellate court employs the standard of review applicable to a motion for a directed verdict. Posin v. A.B.C. MotorCourt Hotel, Inc. (1976), 45 Ohio St.2d 271, 275. An appellate court reviews a trial court's ruling on a motion for a directed verdict de novo, as it presents an appellate court with a question of law.Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257, citingNichols v. Hanzel (1996), 110 Ohio App.3d 591, 599. A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses. Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 284, citing Durham v. WarnerElevator Mfg. Co. (1956), 166 Ohio St. 31, 36; Ruta v. Breckenridge-RemyCo. (1982), 69 Ohio St.2d 66, 68, citing Rohde v. Farmer (1970),23 Ohio St.2d 82, 91.
 {¶ 7} In accordance with Civ.R. 50(A)(4), a directed verdict is properly granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" Furthermore, if the party opposing the motion for a directed verdict fails to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate.Hargrove v. Tanner (1990), 66 Ohio App.3d 693, 695. Conversely, the motion must be denied where substantial evidence exists upon which reasonable minds may reach different conclusions. Posin,45 Ohio St.2d at 275.
 {¶ 8} Here, the evidence reflects that reasonable minds may reach two different conclusions regarding whether Pittard was negligent. At trial, Pittard denied that he was at fault in causing the accident:
 "Q. You don't believe your vehicle had anything to do with this accident. Is that fair?
 "A. Yes.
 "* * *
 "Q. And your truck wasn't actually struck by anybody, correct?
 "A. Correct.
 "Q. Would you agree with me that you were at least in the neighborhood, as it were, of Ghent Road and I-77 northbound when the Smeltzer vehicle collided into the Binsley vehicle?
 "A. Yes.
 "Q. And you had to take evasive action to avoid the Binsley vehicle as it was coming on from Ghent Road onto I-77 northbound, correct?
 "A. I had to change lanes, yes.
 "Q. I understand it's your testimony that you made a normal lane change, correct?
 "A. I had to break a little harder than you would in a normal lane change, but it was not a real evasive, quick move.
 "Q. It's your testimony that you checked your left mirror. You had time to check to see if there were cars over, correct?
 "A. Yes, sir.
 "Q. * * * And you were able to make that left-hand change without, to your vision, disturbing any cars. Is that correct?
 "A. Yes, sir."
Pittard additionally testified that he had to move to the left lane as a result of Binsley's failure to yield to his right of way. Pittard's testimony indicated that there was no need for any vehicle in the left lane to quickly react to his move into the left lane.
 {¶ 9} In contrast, Mr. Smeltzer testified as follows:
 "A. * * * There's an on-ramp approaching from Ghent Road. And just very quickly, as I was driving along in the left-hand lane, there was a truck that was in the right-hand lane, just all of the sudden just slammed on his brakes — just all of the sudden, he was just right in front of me and I just had to hurry up, just make a split-second decision. I just moved to the right to get out of the way. And as soon as I moved over to the right, all of the sudden, I saw a concrete barrier. I couldn't move off to the berm. And all of the sudden, there was another car — I guess it was a Ford Bronco — and he was just there, and my car hit his car."
Mr. Smeltzer's testimony indicates that he was forced to quickly move into the right lane and ultimately collide with Binsley solely as a result of Pittard's sudden movement into the left lane.
 {¶ 10} In addition to Mr. Smeltzer's testimony, we find additional evidence upon which a jury could reasonably find that Pittard was negligent. Pittard does not dispute that he left skid marks approximately 120 feet in length:
 "Q. And that the line of these skid marks are in the neighborhood of 120 to 130 feet? Would you agree with that?
 "A. I didn't see that part of it.
 "Q. Okay. Well, the police indicate here * * * the length * * * is 129 feet, correct? * * * Fair to say that in order for you to avoid the Binsley vehicle, it was necessary for you to brake to the point where you needed to — where you created skid marks as your vehicle moved to the left, correct?
 "A. According to the police report, yes."
In later testimony, he again agreed that he left approximately a 120 foot skid mark:
 "Q. But you're saying — just so the jury is clear on your testimony, you're saying that you were able to get over to the left-hand lane without disturbing traffic.
 "A. Yes.
 "Q. And that's despite the fact that your truck left 120 feet or so of skid marks on the pavement, is that fair?
 "A. Yes."
In addition, Pittard returned to talk with the police after the accident. While Pittard contends that he only returned to talk with the police about the accident to ascertain the accident victims' injuries and to see if anyone needed any help, we find that reasonable minds might also conclude that he had some concern as to whether he had in some way contributed to the accident.
 {¶ 11} Pittard also contends that a photograph of the accident scene depicting a yield sign at the end of the on-ramp establishes that Binsley was required to yield when entering the highway from the on-ramp. He further asserts that a 55 mph speed limit sign located in front of the yield sign establishes that Mr. Smeltzer was negligent per se because he testified that he had exceeded the speed limit. Pittard argues that Binsley's failure to yield and Mr. Smeltzer's failure to obey the speed limit conclusively establish their negligence. He contends he is the only driver who was negligence-free. Pittard additionally claims that the testimony of the police officer, who arrived at the accident scene within minutes of the accident, and an unbiased eye-witness, demonstrate that he had no choice but to swerve to avoid Binsley's vehicle.
 {¶ 12} Although there is substantial evidence that both Binsley and Mr. Smeltzer were negligent, there is also evidence, including Mr. Smeltzer's testimony and evidence regarding the 120 foot skid mark, from which a reasonable juror could conclude that Pittard was negligent. "Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon [Pittard's] motions."Posin, 45 Ohio St.2d at 275. The jury was free to believe or not believe the testimony of the eyewitness, the police officer and Pittard. Here, the jury assessed the credibility of the witnesses and apparently believed Mr. Smeltzer's testimony that Pittard cut him off, causing him to collide with Binsley's vehicle. Under the standard of review on a JNOV, Pittard's argument fails.
 {¶ 13} Based on the foregoing, we find that there is substantial evidence upon which a reasonable jury could conclude that Pittard was negligent. A jury could reasonably conclude that Pittard over-reacted to on-coming traffic and/or failed to observe traffic in the left-hand lane in the course of his quick lane change. Therefore, we conclude that the trial court appropriately denied Pittard's motion for JNOV. Accordingly, Pittard's sole assignment of error is overruled.
 APPELLANTS' ASSIGNMENT OF ERROR
"THE LOWER COURT ERRED BY FAILING TO GRANT APPELLANTS'] PETITIONS TO CORRECT THE DOCKET AND ENTER JUDGMENT ON BEHALF OF [MRS. SMELTZER] IN THE FULL AMOUNT OF HER DAMAGES OF $127,956.79 TO BE PAID JOINTLY AND/OR SEVERALLY BETWEEN APPELLEES, BINSLEY AND/OR PITTARD."
 {¶ 14} In their only assignment of error, the Smeltzers contend that the trial court erred by failing to grant their petition to correct the docket and enter judgment on their behalf in the amount of $127,956.79 to be paid jointly and severally between Pittard and Binsley. We agree.
 {¶ 15} At the outset, we note that our decision is limited to the Smeltzers' contention regarding joint and several liability and the trial court's entry of judgment. We decline to address the trial court's instructions to the jury and the jury's act of apportioning damages instead of the trial court, as neither party has appropriately preserved these issues for appeal.
 {¶ 16} At the time of the accident, Ohio followed the law of joint and several liability. Senate Bill 120, effective April 9, 2003, substantially altered the law of joint and several liability in Ohio. Senate Bill 120 is not retroactive. Prior to the enactment of Senate Bill 120, "[t]he doctrine of joint and several liability ha[d] long been a part of the common law of Ohio." Bowling v. Heil Co. (1987),31 Ohio St.3d 277, 286. The general rule of joint and several liability provides that "where damage is caused by the joint or concurrent wrongful acts of two or more persons, they may be prosecuted therefore jointly or severally." Id., quoting Transfer Co. v. Kelly (1880), 36 Ohio St. 86,90. R.C. 2307.31, which set forth the law regarding contribution among joint tortfeasors and was repealed by Senate Bill 120, provided in part:
 "Except as otherwise provided in this section or section 2307.32 of the Revised Code, if two or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfeasor's total recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share. No tortfeasor is compelled to make contribution beyond that tortfeasor's own proportionate share of the common liability."
 {¶ 17} In his answer, Pittard raised the affirmative defense of comparative fault as a defense to the Smeltzers' claims against him. "The Ohio Supreme Court has defined contributory negligence as `any want of ordinary care on the part of the person injured, which combined and concurred with the defendant's negligence and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred.'" Stiver v. Miami Valley Cable Council (1995),105 Ohio App.3d 313, 317, quoting Brinkmoeller v. Wilson (1975),41 Ohio St.2d 223, 226. Contributory negligence "does not bar a complainant from recovering damages which are the direct and proximate result of the negligence of another, so long as the complainant negligence is `no greater than the combined negligence of all other persons from whom the complainant seeks recovery.'" Stiver, 105 Ohio App.3d at 313, quoting R.C. 2315.19(A)(2) (repealed on April 9, 2003). However, the trial court must reduce any compensatory damages recovered by the complainant "by an amount that is proportionately equal to the percentage of [his] negligence." Stiver, 105 Ohio App.3d at 317, quoting R.C. 2315.19(A)(2).
 {¶ 18} The jury found that Mrs. Smeltzer was entitled to $127,956.79 in damages. The jury apportioned fault equally amongst the three drivers, including Mr. Smeltzer. The jury's responses to the interrogatories reflect that they apportioned damages by the percentage of fault, dividing the $127,956.79 equally amongst the three drivers. Consequently, the jury determined that Mr. Smeltzer, a complainant in this action, was contributorily negligent for a third of Mrs. Smeltzer's damages. The jury's interrogatories reflect that they attempted to enable Mrs. Smeltzer to recover the full amount of her damages from the three drivers. The apportionment of damages in this manner was improper under the law in effect at that time as Mrs. Smeltzer was entitled to recover the full amount of these damages from either defendant, Binsley or Pittard. Consequently, Binsley and Pittard should be held jointly and severally liable for the entire $127,956.79. Either defendant could then seek contribution pursuant to former R.C. 2307.31.
 {¶ 19} We sustain the Smeltzers' assignment of error and instruct the trial court to grant judgment against Binsley and Pittard jointly and severally in the amount of $127,956.79. Accordingly, the Smeltzers' sole assignment of error is sustained.
 III. {¶ 20} Appellee/Cross-Appellant Pittard's assignment of error is overruled. Appellants/Cross-Appellees Smeltzers' assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part and the cause is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellees/Cross-Appellants.
CARR, J. WHITMORE, P. J. CONCUR
[1] Binsley passed away before the Smeltzers commenced this action. Binsley's death was unrelated to the accident at issue herein.